IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | Case No.   2:23-cr-129 |
| vs. | : | JUDGE MORRISON |
| SHAHEED RUSSELL | : | |
| Defendant. | : | |

**SHAHEED RUSSELL'S SENTENCING MEMORANDUM**

**I.   INTRODUCTION.**

On October 3, 2023, Shaheed Russell ("Mr. Russell" and "Shaheed", alternatively) entered a plea of guilty to Count One of an Indictment filed against him in the Southern District of Ohio. The Indictment charged Mr. Russell with Felon in Possession of a Firearm per 18 U.S.C. §§922(g)(1) and 924(a)(2). The Court is tasked with imposing "a sentence sufficient, but not greater than necessary," to vindicate Congress' sentencing mandate, set forth in 18 U.S.C. § 3553(a)(2). The Court must begin sentencing proceedings by first correctly calculating the applicable guideline range. *Gall v. United States*, 128 S. Ct. 586, 596 (2007). However, this guideline range is only "the starting point and the initial benchmark." The Court "may not presume that the guideline range is reasonable." *Id.* at 596-97. A sentencing court is "free to make its own reasonable application of the 18 U.S.C. § 3553(a) factors, and to reject (after due consideration) the advice of the guidelines." *Kimbrough v. United States*, 552 U.S. 85, 113 (2007) (Scalia, J., concurring). "[E]xtraordinary

1

circumstances [are not required] to justify a sentence outside of the guidelines range." *Gall* at 595.

## II . SENTENCING FRAMEWORK

Per the calculation by the U.S. Probation Office, Mr. Russell's total adjusted offense level is 13 and his Criminal History Category is III. The guideline provision under this criteria is 18-24 months. Neither Mr. Russell nor the Government have objected to the calculations. The parties have an agreement pursuant to Criminal Rule 11(c)(1)(C) that calls for a sentence within the calculated sentencing guideline range. The Government has requested a sentence within the agreed upon range to be served consecutive to a sentence in Mr. Russell's supervised release violation in case 2:21-cr-169.

Using this recommendation, however, results in a sentence that is not necessarily commiserate with a sentence that considers Mr. Russell's circumstances nor the nature of this offense. Mr. Russell submits that a sentence of **18-24 months of incarceration concurrent with any sentence on the supervised release violation** would satisfy Congress' codified purposes in sentencing because it would: reflect the seriousness of the offense; provide just punishment; provide adequate deterrence; and protect the public from further crimes committed by him. 18 U.S.C. § 3553(a)(2).

### III. SENTENCING FACTORS—18 U.S.C. § 3553(a).

The final step of the sentencing analysis requires this Court to determine what sentence is sufficient, but not greater than necessary, to satisfy Congress' sentencing mandate. Mr. Russell points to the following three § 3553(a) factors to answer this statutory question: (1) Russell's history and characteristics; (2) the nature and circumstances of the offense and (3) the need for the sentence to reflect just punishment. In the end, Mr. Russell submits that his requested sentence would vindicate Congress' sentencing mandate as it would not diminish the seriousness of his offense, and would provide just punishment, adequate deterrence and protection of the public.

### a. MR. RUSSELL'S HISTORY AND CHARACTERISTICS—§ 3553(a)(1).

*(Note: as Mr. Russell was arrested on this matter mere months after he was released from the Bureau of Prisons on his prior federal offense, the vast majority of Mr. Russell's story remains the same, with the exception of the end. As such, much of what follows is directly verbatim from his sentencing memorandum in Case # 2:21-cr- 169. Nevertheless, it bears reminding this Court how Mr. Russell got to this point:)*

As counsel is fond of noting, there are many cases in which it is hard to see how the adult derived from the child; Shaheed Russell's case is not one of those cases. While Shaheed's early environment coupled with his own cognitive limitations cannot fully

3

justify his past criminal behavior, it can certainly provide some context and insight into both who he was, and to some extent, who he is now.

The story of Shaheed, however, cannot be told without telling the story of Shaheed's mother, Shardae Russell. Ms. Russell gave birth to Shaheed when she was a child herself, at the age of fourteen. She and Shaheed stayed with her mother until she turned eighteen. When she became an adult, Ms. Russell moved out of her family home with her baby boy. She didn't do this because her family forced her out. Quite the contrary, the family was content to let mother and son stay indefinitely. Rather, Ms. Russell wanted to be a strong role model for her child and to show Shaheed the importance of self-reliance.

Moving out as an eighteen-year old with a three-year old son was not easy, however. Ms. Russell relied on the Columbus Metropolitan Housing Authority to assist her to find a place for her and Shaheed. As one might imagine, the options for the two of them were far from ideal. First, the mother and son were placed at Thornwood Commons, where they would be subsequently removed due to a black mold infestation throughout the complex. Next, they would be placed at another apartment complex down the street, at Kenmore Square. They stayed there until someone broke into their apartment, stole most of their food, and defecated in their living room. CMHA would step in and relocate the two of them once again. Ms. Russell and Shaheed would spend roughly the next ten years at Sawyer Manor, a place with its own storied history of violence, but the least worst of the places they had been.

4

That being said, Ms. Russell found none of these places acceptable to raise her son. She worked hard to keep moving upwards. She often found herself working 9-10 hours, seven days-a-week as a home health aide in order to try to keep moving them into better environments, and with the hope of one day moving herself and Shaheed out of the city altogether. It was exhausting work, of course, but she did it out of love for her then only child. Ms. Russell always made sure Shaheed was not want for anything and always had a roof over his head. When she had the time, she gladly took on the role of the smothering, overbearing yet completely dedicated mother. Shaheed both loved and occasionally resented her for it as teenagers will do.

As noted, however, Ms. Russell spent many hours working to support the family. This meant Shaheed was often on his own as a latchkey kid. In the environment of the Linden neighborhoods where Shaheed and Ms. Russell primarily lived, there were many avenues by which one could get in trouble, but the most obvious of those avenues involve hanging out with other people who also engaged in criminal behavior. These people were not strangers to Shaheed. In fact, these were people that Shaheed had known since he was three-years old, people that were close to him. Despite his mother's efforts to keep him out of trouble and out of harm's way, the desire to fit in with his friends proved more than strong enough to pull young Shaheed into criminal behavior in his teenage years. Exacerbating the matter were his learning disabilities. His struggles to read and progress through the school system only became more pronounced as the years went by.

Shaheed's frustration and embarrassment at school only made the allure to join his friends that much stronger.

These circumstances, have, of course, resulted in poor choices made by Shaheed, as he would be the first to acknowledge. Yet, this Court can and should consider these choices in the context of his biological development.

In *Gall*, the Supreme Court quoted with approval from the district court's decision:

> Immaturity at the time of the offense conduct is not an inconsequential consideration. Recent studies on the development of the human brain conclude that the human brain development may not become complete until the age of twenty- five . . . [T]he recent {National Institute of Health} report confirms that there is no bold line demarcating at what age a person reaches full maturity. While age does not excuse behavior, a sentencing court should account for age when inquiring into the conduct of a defendant.

*Gall*, 552 U.S. at 58. The *Gall* court also cited to the Supreme Court's decision in *Edding v. Oklahoma*, 455 U.S. 104, 105 (1982) "youth is more than a chronological fact. It is a time and condition of life when a person may be most susceptible to influence and to psychological damages." *Id*

This salient observation remains pertinent to Shaheed. That immaturity, however, perhaps masks some deeper psychological issues afflicting Shaheed. Consider, during his Pre-Sentence Investigation, Shaheed admitted to struggling to sleep because he routinely has nightmares about getting shot, a not uncommon symptom experienced by those with PTSD. It is with this observation that counsel sought out the expertise of forensic psychologist, Meredith Veltri. It is the hope of

counsel that Dr. Veltri can provide some deeper insight into the root issues Shaheed is experiencing and how we as a society may help address those issues.

### b. NATURE AND CIRCUMSTANCES OF THE OFFENSE; — §§ 3553(a)(1).

The offense for which Shaheed stands convicted is indisputably serious; however, his behavior must be viewed in context of the previously discussed background information and the circumstances of the allegations.

Shaheed had every good intention to follow through with the programming offered by this Court. He began re-entry programming with the Columbus Urban League and received a fork-lift certification. He had just scratched the service on addressing his mental health issues when he began CBT groups. Shaheed was extremely proud of having been able to get his driver's license reinstated. In short, he had just started making progress forward on a positive pathway.

If Shaheed could impress one thing upon this Court is that he fled the scene as much out of fearing being caught with a gun as he did an irrational fear of being shot by the police. He didn't have any realistic belief that he was going to escape the police yet he couldn't stop driving until that deep well of anxiety abated. By the time law enforcement executed the PIT maneuver to stop him, he was rolling at a slow speed, and was subsequently arrested without incident.

His possession of the firearm is the further reflection of his crippling fear of being harmed or worse, being in a position where he couldn't protect his loved ones if they fell into harm's way. Perhaps the fear is wholly unfounded or perhaps there is untreated trauma that fosters this belief, likely both things have a degree of truth. What fully needs to happen before he becomes (again) the victim of gun violence, or he engages in that violence himself, is an intervention that addresses the root issues driving Shaheed's compulsion.

**THE REQUESTED SENTENCE PROVIDES JUST PUNISHMENT AND DOES NOT DIMINISH THE SERIOUSNESS OF MR. RUSSELL'S OFFENSE AND PROVIDES ADEQUATE DETERRENCE AND PROTECTION OF THE PUBLIC—§§ 3553(a)(2)(A)-(C).**

When previously representing Shaheed before this Court, Counsel represented in this space that Shaheed knew never to do this again. That position has not changed. What perhaps was less understood at the time was this compelling need to feel protected. In his mind, he knew he risked losing everything that was important to him: his family and his freedom, for these actions, and yet these actions happened. Identifying this particular issue and addressing it head on in this case, however, will no doubt strengthen his resolve to not reoffend. A sentence of 18-24 months concurrent to the violation followed by a further period of supervised release will not diminish the seriousness of Shaheed's crime. The Court also has the option to impose up to three years of supervised release. Shaheed

will be subject to all of the standard conditions of supervised release in this district, as well as special conditions (particularly mental health treatment) that the Court may choose to impose. If he violates the terms of supervised release, he may be re-imprisoned. Cumulatively, these factors will adequately protect the public from any future crimes that Shaheed might contemplate. It also bears noting that even though defense counsel is requesting a concurrent sentence, the imposition of a consecutive sentence (or longer consecutive sentence) on a supervised release violation remains a constant disincentive.

A sentence greater than that requested is not necessary to deter Shaheed from committing similar offenses. Data shows that long prison sentences do little to deter people from committing future crimes. Dep't. of Justice, Office of Justice Programs, Nat'l Institute of Justice, *Five Things About Deterrence* (available at http://nij.gov/five-things/pages/deterrence.aspx). Viewing the findings of research on severity effects in their totality, there is evidence suggesting that short sentences may be a deterrent. However, a consistent finding is that increases in already lengthy sentences produce at best a very modest deterrent effect. *Id.* In fact, lengthy prison sentences may exacerbate recidivism. *Id.* "Decisions to refrain from crime are based on the mere knowledge that the behavior is legally prohibited or for other nonlegal considerations such as morality or

fear of social sanctions."[1] In addition, "certainty of apprehension and not the severity of the legal consequence ensuing from apprehension is the more effective deterrent."[2]

The requested sentence will have an adequate deterrent effect both on Shaheed and upon on others who might engage in similar conduct. To be an effective deterrent, the sentence must not only educate defendants as to the seriousness of the offense, but should make others in the community "aware that similar actions will be punished." *United States v. Coleman*, 370 F. Supp. 2d 661, 681 (S.D. Ohio 2005), rev'd on other grounds, *United States v. White*, 551 F.3d 381 (6th Cir. Ky. 2008). Shaheed does not want to spend the prime of his life going in and out prison, breaking the hearts of his mother and the rest of his family until they stop caring enough to be able to have their hearts broken. Most of all, Shaheed wants to do better for himself. He cannot do it by himself, at least not yet. We all understand that now. He is, however, capable of doing it with help.

A sentence of 18-24 months for this offense would serve as a significant deterrent for others who might think to engage in such behavior. As noted above, this lengthy period of incarceration shows others that even a firearm kept for protection, when possessed illegally, will have harsh consequences. What Shaheed needs now is assistance with the myriad of mental health and social issues which plague him today. This Court has the resources and ability to provide that assistance to him. He won't have

---

1 Shaheed S. Nagin, *Deterrence in the Twenty-First Century*, 42 Crime & Just. 199, 204 (2013). And even for those "for whom sanction threats might affect their behavior, it is preposterous to assume that their perceptions conform to the realities of the legally available sanction options and their administration." *Id.*
2 *Id.* at 200-201.

to do this by himself, though. Shaheed has the love and support of his family. Having this support structure coincide with services provided by the U.S. Probation Office makes for an ideal solution for all parties involved.

## IV.  CONCLUSION.

In light of his history and characteristics, the nature and circumstances of this offense, his role within the offense, and the sentencing range established for this offense, Shaheed Russell respectfully requests a sentence of 18-24 months incarceration concurrent to any sentence he receives on the supervised release violation. Mr. Russell submits that the requested sentence is sufficient, but not greater than necessary, to punish him for his offense, deter others, and to protect the public.

Respectfully submitted,

JOSEPH MEDICI
FEDERAL PUBLIC DEFENDER

  /s/  Soumyajit Dutta
Soumyajit Dutta (OH 76762)
Assistant Federal Public Defender
Office of the Federal Public Defender
10 West Broad Street, Suite 1020
Columbus, Ohio 43215-3469

11

>Telephone: (614) 469-2999
>Facsimile: (614) 469-5999
>Soumyajit_Dutta@fd.org
>
>*Attorney for Defendant*
>*Shaheed Russell*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record on the date of filing.

>/s/ Soumyajit Dutta
>Soumyajit Dutta (OH 76762)
>Soumyajit_Dutta@fd.org